**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; and CHARLES A. WHOBREY, as Trustee, | ) ) ) | |
| | ) | Case No. 22-cv-2508 |
| *Plaintiffs*, | ) | |
| v. | ) | District Judge |
| | ) | |
| LARRY BUNN, an individual; | ) | Magistrate Judge |
| | ) | |
| *Defendant.* | ) | |

**COMPLAINT**

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund and Charles A. Whobrey, one of its present trustees, for a cause of action against Defendant allege as follows:

**JURISDICTION AND VENUE**

1.     This is an action for collection of withdrawal liability, interest, and penalties incurred by an employer as a result of a withdrawal from a multiemployer pension plan.

2.     This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq.*, and under Indiana's Uniform Fraudulent Transfer Act, Ind. Code § 32-18-2 *et seq.* (West).

3.     This Court has jurisdiction over this action under sections 502(e), 502(f), and 4301(c) of ERISA, 29 U.S.C. §§ 1132(e), 1132(f) and 1451(c), and 28 U.S.C. §§ 1331 and 1367.

4.     Venue lies in this Court under sections 502(e)(2) and 4301(d) of ERISA, 29 U.S.C. §§ 1132(e)(2) and 1451(d), in that the Central States, Southeast and Southwest

1

Areas Pension Fund (the "Pension Fund") is administered at its principal place of business in Chicago, Illinois.

## PARTIES

5.      The Pension Fund is a multiemployer pension plan within the meaning of sections 3(37) and 4001(a)(3) of ERISA, 29 U.S.C. §§ 1002(37) and 1301(a)(3).

6.      Plaintiff Charles A. Whobrey is a present trustee and fiduciary of the Pension Fund within the meaning of section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and he and his fellow trustees are the plan sponsor of the Pension Fund within the meaning of section 4001(a)(10) of ERISA, 29 U.S.C. § 1301(a)(10). The Trustees administer the Pension Fund at 8647 West Higgins Road, Chicago, Illinois.

7.      Pursuant to sections 502(a)(3) and 4301(a)(1) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1451(a)(1), the Trustees, by and through their designated trustee Charles A. Whobrey, are authorized to bring this action on behalf of the Pension Fund, its participants, and its beneficiaries for the purpose of collecting withdrawal liability.

8.      Defendant Larry Bunn ("Defendant Bunn") is an individual who resides in the State of Indiana.

## BACKGROUND INFORMATION

**A.      The NIT Controlled Group.**

9.      Northern Indiana Trucking, LLC ("NIT") is or was a corporation organized under the laws of the State of Indiana.

2

10. Beginning in 2014 and continuing through at least December 25, 2016, Defendant Bunn directly or indirectly owned 100% of the total combined voting power of all classes of outstanding stock entitled to vote or 100% of the total value of outstanding shares of all classes of NIT.

11. During all relevant periods of time, Defendant Bunn was the president of NIT and the individual responsible for its day-to-day operations.

12. On or about December 25, 2016, Defendant Bunn personally owned and operated an unincorporated "trade or business" within the meaning of section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1), that consisted of gambling activities (the "Gambling Business").

13. Upon information and belief, Defendant Bunn's Gambling Business was regular and continuous. Defendant Bunn's gambling activities were: (a) conducted in various casinos located throughout the United States, including without limitation, Indiana, Michigan, Florida, Alabama, and Nevada; (b) engaged on a frequent and recurring basis; and (c) conducted over the course of many years including without limitation, the period of time prior to and through December 2016.

14. Upon information and belief, Defendant Bunn's Gambling Business was conducted on his own accord and was for the purpose of income or profit. Defendant Bunn reported income or profit and/or losses over the course of many years, including without limitation, the period of time prior to and through December 2016, and reported both income and losses in excess of $750,000 from his gambling activities in 2016 alone.

15. On or about December 25, 2016, NIT and the Gambling Business were a group of trades or businesses under common control (the "NIT Controlled Group") and

therefore constituted a single employer within the meaning of section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1), and the regulations promulgated thereunder.

16.    The NIT Controlled Group is the "employer" for purposes of the determination and assessment of withdrawal liability under Title IV of ERISA.

**B.    The withdrawal liability incurred by the NIT Controlled Group.**

17.    During all relevant times, NIT was bound by collective bargaining agreements with certain local unions affiliated with the International Brotherhood of Teamsters under which NIT was required to make contributions to the Pension Fund on behalf of certain of its employees.

18.    The Pension Fund determined that on or about December 25, 2016, the NIT Controlled Group permanently ceased to have an obligation to contribute to the Pension Fund and/or permanently ceased all covered operations, thereby effecting a "complete withdrawal" from the Pension Fund within the meaning of section 4203 of ERISA, 29 U.S.C. § 1383 (the "2016 Withdrawal").

19.    As a result of the 2016 Withdrawal, the NIT Controlled Group incurred joint and several withdrawal liability to the Pension Fund in the principal amount of $3,153,234.98, as determined under section 4201(b) of ERISA, 29 U.S.C. § 1381(b) (the "2016 Withdrawal Liability").

20.    On or about March 16, 2018, the NIT Controlled Group, through NIT, received a notice and demand for payment of the 2016 Withdrawal Liability issued by the Pension Fund in accordance with sections 4202(2) and 4219(b)(1) of ERISA, 29 U.S.C. §§ 1382(2) and 1399(b)(1) (the "Notice and Demand"). The Notice and Demand demanded full payment of the entire amount of the 2016 Withdrawal Liability by April 1,

4

2018, pursuant to section 4219(c)(5)(B) of ERISA, 29 U.S.C. § 1399(c)(5)(B), and Appendix E, § 5(e)(2) of the Pension Fund Plan Document. The amount demanded was $3,153,234.98, the balance owed at that time on the 2016 Withdrawal Liability.

21.     The Notice and Demand was served on Defendant Bunn as the registered agent of NIT.

22.     The NIT Controlled Group did not timely initiate arbitration pursuant to section 4221(a)(1) of ERISA, 29 U.S.C. § 1401(a)(1).

23.     The NIT Controlled Group failed to make the required 2016 Withdrawal Liability payment to the Pension Fund.

**C.     The Pension Fund's judgment against NIT.**

24.     On October 4, 2018, the Pension Fund filed suit against NIT in the United States District Court for the Northern District of Illinois in a case entitled *Central States, Southeast and Southwest Areas Pension Fund, et al. v. Northern Indiana Trucking, LLC.,* Case No. 18 C 6707, to collect the withdrawal liability, plus interest and statutory damages (the "Lawsuit").

25.     On June 11, 2019, a judgment was entered in the Lawsuit in favor of the Pension Fund and against NIT in the total amount of $4,067,623.04, plus post-judgment interest (the "Judgment").

26.     To date, the full amount of the Judgment remains due and owing to the Pension Fund.

**D.     Larry Bunn's knowledge of the withdrawal liability incurred by the NIT Controlled Group to the Pension Fund.**

27.     On or about December 25, 2016, NIT ceased operations.

5

28.     For all times since January 2014 until it ceased operations in December 2016, Defendant Bunn owned 100% of NIT.

29.     On or about March 16, 2018, Defendant Bunn received actual notice of the Pension Fund's 2016 Withdrawal Liability assessment of $3,153,234.98 against the NIT Controlled Group when he received the Notice and Demand.

**E.     NIT's distribution of monies to Larry Bunn.**

30.     For all relevant periods of time since 2014, Defendant Bunn, as owner and president of NIT, was the individual responsible for authorizing any payments made by NIT and managing its assets.

31.     Upon information and belief, during the period of February 2017 through March 2018, Defendant Bunn caused NIT to transfer to him the total amount of $265,137.54 (the "NIT Distributions").

32.     The NIT Distributions in the amount of $265,137.54 consisted of cash transfers from NIT's bank account with First Financial Bank ("First Financial"): one payment to Defendant Bunn in the amount of $85,381.20 on February 23, 2017, and twelve (12) payments from March 2017 through March 2018 made from NIT's account with First Financial that was used to pay personal debts owed by Defendant Bunn, which were not debts of NIT, in the total amount of $179,756.34.

33.     All of the NIT Distributions were made after NIT had incurred the 2016 Withdrawal Liability owed by the NIT Controlled Group, including NIT, to the Pension Fund.

34.     Upon information and belief, Defendant Bunn did not provide any consideration to NIT in exchange for the NIT Distributions.

6

35.     At the time of, or as a result of the NIT Distributions, NIT was left insolvent and lacked sufficient assets to pay its creditors, including the 2016 Withdrawal Liability owed to the Pension Fund.

36.     Upon information and belief, the NIT Distributions were made after NIT incurred its withdrawal liability.

### COUNT I -
### 2016 WITHDRAWAL LIABILITY AGAINST LARRY BUNN
### AS A MEMBER OF THE NIT CONTROLLED GROUP

37.     Plaintiffs reallege and incorporate each and every allegation made in paragraphs 1 through 23 of this Complaint as through fully set forth herein.

38.     The Gambling Business, as a member of the NIT Controlled Group, is jointly and severally liable to the Pension Fund for the 2016 Withdrawal Liability.

39.     Defendant Bunn, as the owner of the unincorporated Gambling Business, is personally liable for the liabilities of such Gambling Business, including the 2016 Withdrawal Liability incurred by the NIT Controlled Group.

**WHEREFORE**, Plaintiffs request the following relief:

(a)     A judgment against Defendant Bunn and on behalf of Plaintiffs, pursuant to sections 502(g)(2) and 4301(b) of ERISA, 29 U.S.C. §§ 1132(g)(2) and 1451(b), for:

(i)     $3,153,234.98 in withdrawal liability;

(ii)    interest computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged;

(iii)    an amount equal to the greater of interest on the past due withdrawal liability or liquidated damages of 20% of the past due withdrawal liability; and

7

(iv)    attorneys' fees and costs.

(b)    Post-judgment interest computed and charged on the entire judgment at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged, compounded annually; and

(c)    For such further or different relief as this Court may deem proper and just.

## COUNT II - 
## UNDER MPPAA'S EVADE OR AVOID PROVISION

42.    Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 36 of this Complaint as though fully set forth herein.

43.    Section 4212(c) of ERISA, 29 U.S.C. § 1392(c), prohibits a transaction if a principal purpose of such transaction is to evade or avoid the payment of withdrawal liability to the Pension Fund.

44.    Upon information and belief, a principal purpose behind the NIT Distributions was to evade or avoid the payment of the 2016 Withdrawal Liability owed by the NIT Controlled Group to the Pension Fund.

45.    Under section 4212(c) of ERISA, 29 U.S.C. § 1392(c), the NIT Distributions may be disregarded, and Defendant Bunn may be held liable to the Pension Fund for all amounts transferred to him by NIT.

**WHEREFORE**, Plaintiffs request the following relief:

(a)    That this Court void and disregard the NIT Distributions;

(b)    A judgment against Larry Bunn and on behalf of the Pension Fund and Charles A. Whobrey, as Trustee, and pursuant to sections 502(g)(2) and 4301(b) of ERISA, 29 U.S.C. §§ 1132(g)(2) and 1451(b), for –

        (i)        withdrawal liability in the amount of $3,153,234.98 or the amounts improperly transferred to Larry Bunn, whichever is less;

        (ii)       interest computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged;

        (iii)     an amount equal to the greater of interest on the past due withdrawal liability or liquidated damages of 20% of the past due withdrawal liability;

        (iv)     the unpaid contributions owed to the Fund;

        (v)       interest on the unpaid contributions computed and charged at the greater of (a) an annualized intertest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (b) an annualized interest rate of 7.5%;

        (vi)     an amount equal to the greater of interest on the unpaid contributions or liquidated damages of 20% of the unpaid contributions; and

        (vii)    attorney's fees and costs.

    (c)    Post-judgment interest computed and charged on the entire judgment at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged, compounded annually; and

    (d)    For such further or different relief as this Court may deem proper and just.

TM: 611694 / 22410093 / 5/12/2022

**COUNT III**
**UNDER INDIANA'S UNIFORM**
**FRAUDULENT TRANSFER ACT**

46.     Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 36 of this Complaint as though fully set forth herein.

47.     This count is brought by the Pension Fund, as a creditor of NIT, under Indiana's Uniform Fraudulent Transfer Act,  Ind. Code § 32-18-2 *et seq.*, for the collection of improper distributions by NIT to Defendant Bunn.

48.     The NIT Distributions were made and entered into with the intent to hinder, delay, or defraud NIT's creditors, including the Pension Fund.

49.     Alternatively, the NIT Distributions were made without NIT receiving reasonably equivalent value and NIT believed or reasonably should have believed that it would incur debts beyond its ability to pay as they became due.

50.     At the time of, or as a result of, the NIT Distributions, NIT was left insolvent and lacked sufficient assets to pay its creditors, such as the Pension Fund.

51.     The NIT Distributions were fraudulent as to the Pension Fund who was a creditor of NIT before and after the NIT Distributions were made.

**WHEREFORE**, Plaintiffs request the following relief pursuant to Ind. Code § 32-18-2-17:

(a)     Avoidance of the NIT Distributions to the extent necessary to satisfy Plaintiffs' claim;

(b)     An attachment or garnishment against the assets transferred;

(c)     An injunction against the further disposition of the assets transferred;

(d)     Appointment of a receiver to take charge of the assets transferred;

10

(e)     For such further or different relief as this Court may deem proper and just.

Respectfully submitted,

*/s/Helen A. Lozano*
Helen A. Lozano
Attorney for Plaintiffs
Central States Funds
8647 W. Higgins Road, 8th Floor
Chicago, Illinois 60631
(847) 582-5122
ARDC # 6321032
May 12, 2022                                          hlozano@centralstatesfunds.org

11